JILL H. FERTEL (*Pro Hac Vice* forthcoming)
CIPRIANI & WERNER PC
450 Sentry Parkway – Suite 200
Blue Bell, PA 19422
Tel:    610.567.0700
Email: jfertel@c-wlaw.com

MADELINE L. BUTY [SBN 157186]
MICHAEL C. GUASCO [SBN 258765]
BUTY & CURLIANO LLP
516 – 16th Street
Oakland, CA  94612
Tel:    510.267.3000
Fax:   510.267.0117
Email: mbuty@butycurliano.com
            mguasco@butycurliano.com

Attorneys for Plaintiff
SAGE MARKETING ADVISORS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAGE MARKETING ADVISORS, INC., | Case No: |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF – 28 U.S.C. § 2201** |
| | **(1) BREACH OF EXPRESS CONTRACT** |
| META PLATFORMS, INC., d/b/a FACEBOOK | **(2) BREACH OF IMPLIED CONTRACT** |
| Defendant. | **(3) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| | **ACTION FILED:** |

Plaintiffs SAGE MARKETING ADVISORS, INC. (hereinafter referred to as "Plaintiff" or "Sage"), by and through their undersigned counsel, Cipriani & Werner PC, hereby initiates this action against META PLATFORMS, INC, d/b/a FACEBOOK (hereinafter referred to as "Facebook" or Defendant"), for equitable relief. In support thereof, Plaintiffs allege the following:

## PRELIMINARY STATEMENT

1. Plaintiff is a social media-based marketing and advertising business that has enjoyed a mutually beneficial relationship with Facebook.

2. In recent years, the field of advertising has undergone a dramatic shift. Consumers have shifted away from traditional marketing and increasingly rely on social media networks when choosing goods and services.

3. Advertising on social media networks is "increasingly more vital to the marketing mix."[1]

4. Facebook is one of the largest social networks in the world. An estimated 2.936 *billion* people use Facebook. On any given day, an estimated 37% of people *on Earth* have used their Facebook account.[2]

5. Facebook users of both personal and professional accounts are vulnerable to malicious actions by third parties who seek to hijack, control, and manipulate accounts for nefarious purposes.

6. Once an account has been hijacked by a third-party, the account holder is powerless to regain control of the account without the assistance of Facebook.

7. Unfortunately, Facebook offers little assistance to those who seek help to restore their stolen accounts.[3]

8. In a comment to the Wall Street Journal, Joe Osborne, a spokesman for Facebook's parent company, "declined to comment on specific user experiences but acknowledged that losing an account can be distressing and that the company needs to improve."[4]

---

[1] "Marketing, Advertising and Promoting Licensed Products", The Law of Merchandise and Character Licensing, LMCL ¶ 5B:3.
[2] https://tinyurl.com/mscyy7xr
[3] https://www.wsj.com/articles/hello-hello-is-this-facebook-anybody-there-nope-11653316237
[4] https://www.wsj.com/articles/hello-hello-is-this-facebook-anybody-there-nope-11653316237

BUTY & CURLIANO LLP
516 16TH STREET
OAKLAND CA 94612
510.267.3000

9. While losing control of one's Facebook account can be frustrating to a recreational user, losing control of a commercial account can cause its holder to experience devastating economic costs.

10. It is one such loss, and Facebook's apparent refusal to rectify a situation within its control, that underlies this action.

## THE PARTIES

11. Sage Marketing Advisors, Inc. is a corporation organized under New York state law with its principal place of business located at 700 Northern Boulevard, Suite 109, Brookville, New York.

12. Meta Platforms, Inc. d/b/a Facebook is a Delaware corporation with its principal place of business located at 1601 Willow Road, Menlo Park, California.

13. Meta Platforms, Inc. d/b/a Facebook is a citizen of both Delaware and California.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this matter because Plaintiff enjoys diversity of citizenship from Defendant and the amount in controversy is in excess of $75,000.

15. Venue is proper in the Northern District of California as Defendant has its principal place of business in the Northern District of California. Moreover, the parties have agreed that any commercial dispute not subject to arbitration be heard in the United States District Court for the Northern District of California *or* a state court in San Mateo County. *See* § 5(c) of Facebook Commercial Terms of Service, attached hereto as Exhibit A.

16. This matter should be assigned to the San Francisco division of the United States District Court for the Northern District of California as venue would be proper in San Mateo County had this matter been filed in a state court. *See Id.*

17. This matter is not subject to the agreement to arbitration as this action has arisen from violations of Sage Marketing's confidential information and/or trade secrets. *See* Exhibit A, § 5(c)(i).

## FACTUAL ALLEGATIONS

18. Plaintiff brings this action to recover access and control over nine commercial

Facebook Accounts: Sage Marketing, Sage Staffing, Safeway Fire and Protection Company, Sleepwell Solutions, Gelb Practice Solutions, Gelb Institute, Total Health Physical Therapy, Top Advisors, and Red, Blue, Green Concepts.

19. Sage Marketing is an account owned and controlled by Sage. Sage provides digital marketing services throughout the United States. Using the Sage Marketing account, Sage conducts social media campaigns for its clients, runs lead generation campaigns, solicits business leads, and provides those leads to its clients.

20. Sage relies *entirely* on the Sage Marketing account to acquire leads and new customers for itself and its many clients.

21. Over the past five years, the Sage Marketing account has been used to reach over two million users on Facebook.

22. The Sage Marketing account contains confidential information including names, phone numbers, email addresses, and additional information of every individual that has interacted with its advertising.

23. The Sage Marketing account also contains confidential information and/or trade secrets such as the pixel information for each of its clients and customer credit card information.

24. Pixel information is a piece of code embedded on advertisements, websites, and landing pages that tracks anyone who interacts with the advertiser or their clients. This information allows an advertiser to target these users at lower cost.

25. The pixel information obtained by Sage using the Sage Marketing Account was gathered over a period of years and implicates hundreds of thousands of individual consumers and cannot be replicated.

26. The manner in which pixel information is collected is based on highly specialized, trade secret marketing techniques.

27. The Sage Marketing account also maintains credit card numbers belonging to its clients. These credit card numbers are used to process ad sales on behalf of Sage Marketing Advisors, Inc. clients.

28. The Sage Staffing account relies entirely on social media to reach its audience of

business owners to acquire new customers.

29. The Sleepwell Solutions account is owned and controlled by Sage. This account produces advertisements related to services helping people stop snoring and achieve better airway management to allow for easier breathing and assists interested consumers in scheduling appointments with client medical professionals.

30. The Sleepwell Solutions account relies entirely on Facebook for advertising and client services.

31. The Sleepwell Solutions program is scheduled to expand to serve new clients in July of 2022.

32. Safeway Fire and Protection Company is an account managed by Sage on behalf of one of its clients. Sage uses this account to promote and advertise services on behalf of its client.

33. Total Health Physical Therapy is an account managed by Sage on behalf of one of its clients. Sage uses this account to promote and advertise services on behalf of its client.

34. Top Advisors is an account managed by Sage on behalf of one of its clients. Sage uses this account to promote and advertise services on behalf of its client.

35. Red, Blue, Green Concepts is an account managed by Sage on behalf of one of its clients. Sage uses this account to promote and advertise services on behalf of its client.

36. Gelb Practice Solutions is an account managed by Sage on behalf of one of its clients. Sage uses this account to promote and advertise services on behalf of its client.

37. Gelb Institute is an account managed by Sage on behalf of one of its clients. Sage uses this account to promote upcoming professional conferences on behalf of its client.

38. Additionally, Plaintiff has identified several other accounts belonging to its clients that are subject to possible or likely seizure by the hackers.

39. Plaintiff has, over the course of years, developed a substantial client base consisting of businesses across the United States.

40. Further, Plaintiff has carefully built a professional reputation, the value of which is significant.

41. On June 10, 2022 at 3:23 p.m. EST, Dan Klein, one of Plaintiff's two controlling

partners, fell victim to a phishing email purporting to originate from Facebook regarding Plaintiff's Facebook accounts. A copy of this email is attached hereto as Exhibit B.

42. A phishing attack is a type of social engineering in which an attacker sends a victim a fraudulent email designed to elicit sensitive information or deploy malware on the victim's computer.

43. The attacker used the phishing attack to elicit passwords for the subject Facebook accounts and seize control thereof.

44. At 3:59 p.m., Mr. Klein received a notification that someone had logged in to his account from Pristina, Kosovo. A copy of this notification is attached hereto as Exhibit D.

45. At 4:05 p.m., Mr. Klein notified Jay Mills, a Facebook Agency Marketing Expert, notifying him of the compromise to his account. A copy of this email is attached hereto as Exhibit E.

46. At 4:10 p.m., Mr. Klein received a notification that his personal account had been suspended. A copy of this notification is attached hereto as Exhibit F.

47. Between 4:18-4:19 p.m., Mr. Klein received a notification that he had been removed as an administrator from the Sage Marketing, Sage Staffing, and Gelb Institute Accounts. A copy of these notifications is collectively attached hereto as Exhibit G.

48. On that date, Mr. Mills contacted Meta Concierge Support requesting intervention on Plaintiffs' behalf, writing: "Account just got hacked. Needs to be dealt with as soon as possible before the hackers start spending money. Please escalate the issue so this can be handled now as this just happened. The hacker is moving and creating things right now in the business manager and has removed everyone as an admin. Please help immediately." A ticket number was generated bearing "Job: 32439309888644." A copy of this request and its response is attached hereto as Exhibit H.

49. In response to Mr. Mills, a Meta Concierge Support official responded and requested the following in order to respond to this incident:

1. A valid photo ID of the requestor. . . ;
2. A signed statement with the request and below information:

a. A description of the requestor relationship to the Business (and authority to request access to the Business, as applicable)

b. An explanation of your request, and whether there has been a termination of the employment and/or business relationship with the named person(s)/Business as applicable;

c. The amount of the past three invoices on the ad account(s) that the Business owns, plus the last 4 digits on the credit card + expiration date;

d. A declaration that the information you have provided is true and accurate (e.g. "I certify that the information provided is true and accurate") – your statement must include similar language.

*Id.*

50. On June 11, 2022, Plaintiffs submitted a packet containing all of the required information. A copy of this packet is attached hereto as Exhibit I.

51. "Job: 32439309888644" was closed and marked as "resolved" without any meaningful response from Facebook.

52. Two additional tickets have been generated by Facebook. Facebook has similarly made no meaningful response.

53. Mr. Klein repeatedly contacted Jay Mills of Facebook, fervently requesting help.

54. As Facebook continued to ignore Plaintiff's pleas, the hackers proceeded to abuse Plaintiffs' accounts.

55. Using the confidential client credit card information stored on Plaintiff's accounts, the hackers made numerous fraudulent credit card charges to Plaintiffs' clients.

56. Additionally, the hackers created fraudulent advertisements using several of Sage's accounts. Each fraudulent account tampers with the integrity of Sage's pixel data, thwarting the efficiency of Sage's ongoing and future marketing campaigns.

57. Upon information and belief, absent Facebook's intervention, the hackers will continue to access Plaintiff's confidential client credit card information.

58. Facebook, through its representatives, have been notified of the ongoing

dissemination of Plaintiffs' confidential information and/or trade secrets.

59. As a result of the hacker(s)' control of Plaintiff's accounts and confidential information, as of this writing, Plaintiff has confirmed that the hackers have used their confidential information to hack accounts belonging to *at least nine* of Plaintiff's clients. Additionally, Plaintiff has identified numerous additional clients who are probable or possible targets of the hackers.

60. As a further result of the hacker(s)' control of Plaintiff's account, the hackers have seized control of the Sleepwell Solutions account as well as several client accounts managed by Plaintiff including but not limited to Safeway Fire and Protection Company, Gelb Practice Solutions, Gelb Institute, Total Health Physical Therapy, Top Advisors, and Red, Blue, Green Concepts.

61. Plaintiff cannot safeguard its client's accounts and confidential information unless and until they recover control of their accounts.

62. As a result of the hacker(s)' control of Plaintiff's accounts and confidential information, Plaintiff has identified numerous additional clients that have experienced probable or potential compromise of their accounts.

63. As a result of the hacker(s)' control of Plaintiff's accounts and confidential information, the hackers have utilized Plaintiffs' accounts to run advertisements posing as Plaintiffs.

64. As a result of Facebook's inaction, the hackers continue to control Plaintiff's accounts.

65. As a result of Facebook's inaction, the hackers have possession of Plaintiff's confidential information, trade secrets, and confidential information belonging to Plaintiff's clients.

66. Facebook is aware of the hackers' control of Plaintiff's accounts and the nature and extent of the damage

67. Facebook's decision to knowingly and intentionally allow the hackers to control Plaintiff's accounts as well as their confidential information and trade secrets amounts to a willful dissemination of Plaintiffs' confidential information and trade secrets.

68. As a direct and proximate result of Facebook's inaction, Plaintiff has lost significant

marketing revenue.

69. As a direct and proximate result of Facebook's inaction, Plaintiff will continue to lose marketing revenue and business opportunities in the future.

70. As a direct and proximate result of Facebook's inaction, Plaintiff has lost meaningful, beneficial, and profitable relationships with customers.

71. As a direct and proximate result of Facebook's inaction, Plaintiff has and will continue to suffer profound damage to its professional reputation.

## COUNT 1 – BREACH OF CONTRACT

72. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

73. Plaintiff entered into a commercial relationship with Facebook. This commercial relationship includes, but is not limited to, the use of the Sage Marketing, Sage Staffing, and Gelb Institute.

74. Facebook requires those who utilize its platform to enter into a agreement (hereinafter "the Contract") which is available at https://www.facebook.com/business/direct_terms_ads_en.php. A true and correct copy of the Contract is attached hereto as Exhibit C.

75. Pursuant to the Contract, Facebook agrees to deliver Client Ads on behalf of its Advertisers, to wit, Plaintiff.

76. The Contract recognizes that either or both parties may need to share confidential information with one another in furtherance of the Contract's subject matter. *See* Exhibit A, 9.1.

77. "Confidential information" is defined as anything "that has been designated as confidential or that, given the nature of the information and/or the circumstances surrounding its disclosure, should reasonably be considered confidential" *Id.*

78. The Contract includes an agreement that the recipient of any such confidential information "shall maintain in confidence Confidential Information and not disclose Confidential Information to any third party. . . . without Discloser's prior written consent." *Id.*

79. Confidential information maintained by the Sage Marketing, Sage Staffing, and

Gelb Institute includes, but is not limited to the following:

    a. Client credit card information;

    b. Client pixel information;

    c. Names, phone numbers, email addresses, and additional information obtained from every individual that has interacted with the subject accounts;

    d. Business leads generated for Plaintiff;

    e. Business leads generated for Plaintiff's clients; and,

    f. Plans, communications, and trade secrets related to advertising and marketing campaigns.

80. Plaintiff has entrusted its confidential information to Facebook by use of its platform. Facebook is in effect in possession of said material.

81. Facebook has failed to remove the hackers from control of Plaintiff's accounts or return the accounts to Plaintiff's control, resulting in the dissemination of Plaintiff's confidential information.

82. As a result of Facebook's willful inaction, Facebook has failed to maintain the confidential information entrusted and or disclosed to it by Plaintiff.

83. Further, Facebook's decision to allow the hackers continued access to and use of Plaintiff's confidential information amounts to dissemination of Plaintiff's confidential information.

84. Accordingly, Facebook has breached its Contract with Plaintiff.

85. As a result of Facebook's failure to maintain confidentiality of Plaintiff's confidential information, Plaintiff has suffered and will continue to suffer

    a. Past lost revenue;

    b. Future lost revenue;

    c. Past loss of professional opportunities;

    d. Loss of future professional opportunities;

    e. Loss of professional reputation; and,

    f. Loss of confidential information;

BUTY & CURLIANO LLP
516 16TH STREET
OAKLAND CA 94612
510.267.3000

**COMPLAINT**

g. Loss of integrity of pixel information, data, and strategic elements of marketing campaigns.

86. Pursuant to 28. U.S.C. 2201, a district court may enter an order for injunctive relief for any case or controversy over which it has jurisdiction.

87. The Contract specifies that the parties acknowledge that breach of their responsibility to safeguard confidential information "will cause irreparable harm . . . for which monetary damages will be inadequate." Further, the parties agree that an aggrieved party may seek and obtain injunctive and other equitable relief. Exhibit A, 9.1(b).

WHEREFORE, Plaintiff, Sage Marketing Advisors, Inc., respectfully requests that this Honorable Court enter an Order returning the subject Facebook accounts – Sage Marketing, Sage Staffing, and Gelb Institute, to Plaintiff's exclusive control.

## COUNT II – BREACH OF IMPLIED CONTRACT

88. Plaintiff hereby incorporates by reference the preceding paragraphs by reference as though fully set forth at length herein.

89. As set forth above, Plaintiff entered into an agreement with Facebook to use its platform for commercial purposes.

90. Implicit in this agreement was Facebook's implicit promise that Plaintiff would have exclusive use and control of its accounts for professional, commercial purposes.

91. Plaintiff has lost access and control to their accounts, thereby frustrating the goal of their contract with Facebook.

92. Restoration of access to Plaintiff's accounts is solely within the power of Facebook.

93. Plaintiff promptly notified Facebook of the hacker's seizure of its accounts and promptly complied with Facebook's requests in order to facilitate the return of its accounts.

94. Despite Plaintiff's efforts, Facebook has inexplicably failed to restore its accounts.

95. As a direct and proximate result of Facebook's breach of its implied contract with Plaintiff, Plaintiff has suffered and will continue to suffer as follows:

a. Past lost revenue;

b. Future lost revenue;

BUTY & CURLIANO LLP
516 16TH STREET
OAKLAND CA 94612
510.267.3000

11
**COMPLAINT**

c. Past loss of professional opportunities;

d. Loss of future professional opportunities;

e. Loss of professional reputation; and,

f. Loss of confidential information;

g. Loss of integrity of pixel information, data, and strategic elements of marketing campaigns.

96. Pursuant to 28. U.S.C. 2201, a district court may enter an order for injunctive relief for any case or controversy over which it has jurisdiction.

WHEREFORE, Plaintiff, Sage Marketing Advisors, Inc., respectfully requests that this Honorable Court enter an Order returning the subject Facebook accounts – Sage Marketing, Sage Staffing, and Gelb Institute, to Plaintiff's exclusive control.

## COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

97. Plaintiff hereby incorporates by reference the preceding paragraphs by reference as though fully set forth at length herein.

98. As detailed above, Plaintiff entered into express and implied contracts with Facebook to utilize its platform for professional and commercial purposes.

99. All contracts include an implied covenant of good faith and fair dealing between the parties.

100. Facebook's failure to timely return control of the subject accounts to Plaintiff despite Plaintiff's good faith efforts have deprived Plaintiff of the benefit of its bargain with Facebook.

101. As a result of Facebook's conduct and inaction, Plaintiff has suffered and will continue to suffer

a. Past lost revenue;

b. Future lost revenue;

c. Past loss of professional opportunities;

d. Loss of future professional opportunities;

e. Loss of professional reputation; and,

f. Loss of confidential information;

g. Loss of integrity of pixel information, data, and strategic elements of marketing campaigns.

102. Pursuant to 28. U.S.C. 2201, a district court may enter an order for injunctive relief for any case or controversy over which it has jurisdiction.

WHEREFORE, Plaintiff, Sage Marketing Advisors, Inc., respectfully requests that this Honorable Court entering an Order returning the subject Facebook accounts – Sage Marketing, Sage Staffing, and Gelb Institute, to Plaintiff's exclusive control.

DATED: June 28, 2022          By: */s/ Jill H. Fertel*
    MADELINE L. BUTY
    MICHAEL C. GUASCO
    BUTY & CURLIANO LLP
    516 – 16th Street
    Oakland, CA 94612

    JILL H. FERTEL (*pro hac vice* forthcoming)
    CIPRIANI & WERNER PC
    450 Sentry Parkway – Suite 200
    Blue Bell, PA 19422

    Attorneys for Plaintiff
    SAGE MARKETING ADVISORS, INC.